## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARK W. SPINELLI,**

     **Plaintiff,**

**v.**                                        **1:23-cv-00361-LF-KK**

**COHERUS BIOSCIENCES, INC.,**

     **Defendant.**

### <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Mark W. Spinelli ("Plaintiff") was employed by Defendant Coherus BioSciences, Inc. ("Defendant") as an Oncology Account Manager from February 1, 2021, until October 7, 2021. He has brought this action against Defendant, claiming that Defendant: 1) discriminated against him on account of his serious medical condition and sincerely held religious beliefs in violation of the New Mexico Human Rights Act ("NMHRA"), NMSA 1978, § 28-1-1 *et seq*; 2) breached an implied employment contract with Plaintiff; 3) breached the common law covenant of good faith and fair dealing; 4) retaliated against Plaintiff under both the NMHRA and at common law on account of his serious medical condition and his sincerely held religious beliefs, and 5) subjected him to intentional infliction of emotional distress. Defendant now moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. After careful consideration of the motion, briefs and submissions of the parties and relevant case law, the Court GRANTS the motion and enters judgment accordingly.

**I.**

**FACTS AND PROCEDURAL BACKGROUND**

The following facts are either undisputed or taken as true as required upon consideration of a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6).[1]

### A. Plaintiff's Employment at Coherus

Plaintiff was hired by Defendant as an Oncology Account Manager ("OAM") on February 1, 2021. *Id.* at ¶ 11. Plaintiff was hired as an at-will employee and acknowledged his at-will status by signing an acknowledgement form of Defendant's employment policy.[2] Doc. 25-2, Ex. A. Plaintiff's primary job responsibility as an OAM employed by Defendant was to "develop relationships with Oncology practices … and present educational materials and information to encourage them to use … a medicine used to treat low white blood cells that is caused by cancer treatments." Doc. 15 at ¶ 12. Plaintiff was hired by Defendant during the COVID-19 pandemic and as a result worked remotely for the entirety of his employment with Defendant. *Id.* at ¶¶ 15-16.

On June 28, 2021, Defendant announced that it would require all of its employees to provide Defendant with proof of vaccination against COVID-19 by July 19, 2021. *Id.* at ¶ 24. A few weeks later, Defendant's Vice President of Sales implemented a policy that would require "sixty (60%) of all customer interactions ...  be face-to-face" and prohibiting "unvaccinated employees … from having face-to-face interactions with customers." *Id.* at ¶ 25.

---

[1] *Holt v. U.S.*, 46 F.3d 1000, 1002 (10th Cir. 1995) ("In reviewing a facial attack on the complaint [raised under Rule 12(b)(1)], a district court must accept the allegations in the complaint as true."); *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("For purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.).

[2] Plaintiff's at-will status is a fact contested by the parties. However, even taking Plaintiff's version of the facts as true, the Court is without any factual support to find Plaintiff was not an at-will employee. *See infra* III.2.

After becoming aware of Defendant's COVID-19 vaccine mandate, Plaintiff "consulted with his primary healthcare provider, Monica Ortega, for a medical opinion and recommendation on whether the COVID-19 vaccine would be safe for him, considering his medical history." *Id.* at ¶ 28.[3] Plaintiff obtained a "Healthcare Provider's Note" from Ms. Ortega expressing that Plaintiff "has a prior vaccine injury, which resulted in permanent nerve damage and trigeminal nerve problems. He is at an increased risk for further nerve damage and/or paralysis from the COVID-19 vaccines" and should not be vaccinated against COVID-19. *Id.* at ¶ 31.

On July 19, 2021, Plaintiff submitted two exemption requests to Defendant seeking exemption from Defendant's COVID-19 vaccine mandate based on his medical history and on his sincerely held religious beliefs, which prohibit him from "put[ting] an experimental drug into his body, particularly one that is developed, tested, and/or produced with technology that an individual deems morally repugnant." *Id.* at ¶¶ 30, 32.

On October 1, 2021, Plaintiff received an email stating his exemption requests had been "denied, asserting that the accommodation [Plaintiff] sought would create an undue hardship and burden on [Defendant's] business and negatively impact its ability to do what is necessary to reach its revenue goals." *Id.* at ¶ 36. On the same day, Plaintiff received an email terminating his employment with Defendant. *Id.* at ¶ 37.

**B. Plaintiff's Filing with the EEOC and NMHRB**

On November 19, 2021, Plaintiff filed a charge of discrimination with the New Mexico Human Rights Bureau ("NMHRB"). Doc. 15 at 51. On Plaintiff's charge of discrimination,

---

[3] The medical history Plaintiff was concerned about related to a 2015 incident where Plaintiff received a dose of the Varicella vaccine as required by his employer at the time.  Id. at ¶ 29. As a result of that vaccination, Plaintiff alleges he experienced temporary paralysis on the "left side of his torso and face" and sustained "permanent, irreversible nerve damage." Id. at ¶ 29.

Plaintiff checked the boxes for "retaliation," "disability," and "other" signifying "serious medical condition" under the charge of discrimination's "discrimination based on" field. Doc. 25-2, ex. C. Nowhere in the narrative portion of Plaintiff's charge of discrimination does Plaintiff allege he was discriminated or retaliated against on account of his sincerely held religious beliefs. *Id*; Doc. 25-1 at 4.

On December 2, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 47. On Plaintiff's charge of discrimination, Plaintiff checked the boxes for "disability" and "retaliation" under the charge of discrimination's "circumstances of alleged discrimination" field. Doc. 25-2, ex. D. Nowhere in the narrative portion of Plaintiff's charge of discrimination does Plaintiff allege he was discriminated or retaliated against on account of his sincerely held religious beliefs. *Id*; Doc. 25-1 at 4.

On December 13, 2022, the NMHRB issued an "Order of Non-Determination" to Plaintiff. Doc. 15 at ¶ 52.

**C. Plaintiff's Lawsuit**

Plaintiff filed his Amended Complaint before this Court on May 24, 2023, alleging employment discrimination and retaliation in violation of the NMHRA based on his serious medical condition or disability and his sincerely held religious beliefs, breach of his employment contract, breach of the implied covenant of good faith and fair dealing, retaliation at common law, and intentional infliction of emotional distress.

Defendant filed its motion to dismiss on June 7, 2023. Defendant raises two arguments for dismissal under Federal Rule of Civil Procedure 12. First, the Defendant argues that this Court lacks subject matter jurisdiction over Plaintiff's religious discrimination and retaliation claims raised in Count I of Plaintiff's Amended Complaint under Rule 12(b)(1). As to the remaining

claims, Defendant raises a Rule 12(b)(6) challenge. This Court held a hearing on the instant motion on January 8, 2024.

## II.
## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss claims raised by a plaintiff's complaint for which it lacks subject matter jurisdiction.  Rule 12(b)(1) motions can take the form of either "(1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).  On a Rule 12(b)(1) motion, the Court is to regard a plaintiff's factual allegations as true. *Holt v. U.S.*, 46 F.3d 1000, 1002 (10th Cir. 1995).

Under Rule 12(b)(6), a court "may dismiss a complaint for 'failure to state a claim upon which relief can be granted.'" *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (quoting Fed. Rule of Civ. P. 12(b)(6)). Under the *Twombly/Iqbal* approach adopted by the United States Supreme Court, a complaint must contain "facial plausibility … that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). Significantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to achieve facial plausibility. *Id.* Well pleaded facts in the plaintiff's complaint "must be taken as true … and all reasonable inferences must be indulged in favor of the plaintiff." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). However, conclusory allegations are entitled to no such deference. *See Bowling v. Rector*, 584 F.3d 959, 963 (10th Cir. 2009).

**III.**

**ANALYSIS**

**A.  Defendant's Motion to Dismiss Count I of Plaintiff's Complaint for Discrimination and Retaliation in Violation of the NMHRA is Granted.**

Count I of Plaintiff's Complaint alleges he was subject to discrimination and retaliation by Defendant on account of his serious medical condition or disability and his sincerely held religious beliefs. Because Plaintiff failed to plead necessary facts alleging that his serious medical condition qualifies Plaintiff as disabled under the NMHRA and because Plaintiff failed to exhaust his administrative remedies regarding his religious discrimination and retaliation claims, Count I is dismissed.

**1)  Plaintiff's Discrimination and Retaliation Claim Under the NMHRA Regarding his Serious Medical Condition or Disability.**

Through its motion to dismiss, Defendant argues that Plaintiff failed to sufficiently plead the requisite elements of a discrimination claim under the NMHRA because Plaintiff failed to plead facts showing that Plaintiff's disability or serious medical condition substantially limits a major life activity. Doc. 25-1 at 11. Defendant argues that Plaintiff's failure to demonstrate a major life activity limited by Plaintiff's serious medical condition or disability prevents Plaintiff from being considered "disabled" or having a serious medical condition under the meaning of the NMHRA. *Id.*

Plaintiff alleges that he suffers from a serious medical condition or disability in the form of "permanent, irreversible nerve damage" sustained because of an adverse reaction to the Varicella vaccine he received in 2015. Doc. 15 at ¶ 29. Plaintiff submitted a request to Defendant to be exempt from Defendant's COVID-19 vaccine mandate on the grounds that his nerve damage could be exacerbated by receiving the COVID-19 vaccine. As part of Plaintiff's exemption request, he provided Defendant with a "Healthcare Provider's Note" which explained that Plaintiff "is at an increased risk for further nerve damage and/or paralysis from the COVID-19 vaccines." *Id.* at ¶

6

31.   Plaintiff alleges that Defendant's denial of his exemption request, and his termination for failing to receive the vaccine, constituted discrimination and retaliation against him on the basis of his serious medical condition or disability in violation of the NMHRA.[4] *Id.* at ¶ 64.

       i.     *Discrimination Based on Plaintiff's Disability Under the NMHRA.*

An employer violates the NMHRA when "an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of ... physical or mental handicap or serious medical condition." NMSA 1978, § 28–1–7(A).

When evaluating claims of employment discrimination raised under the NMHRA, the Court applies the Tenth Circuit's framework for analyzing claims brought under the ADA. *Id.* ("The New Mexico Supreme Court has relied upon the Tenth Circuit's articulation of the elements of a prima facie unlawful termination case under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213 (1994), a federal statute prohibiting discrimination against persons with a disability, and applied those same elements to a NMHRA disability claim."). Under the Tenth Circuit standard, "a plaintiff must establish (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability." *White v. York Intern. Corp.*, 45 F.3d 357, 360-61 (10th Cir. 1995). The definition of "physical or mental disability" under the NMHRA is "a physical or

---

[4] Plaintiff asserted throughout the pleadings that the adverse reaction he suffered from the Varicella vaccine constituted either a "serious medical condition" or a "disability." As such, Plaintiff's Complaint is analyzed separately to determine if he pled sufficient facts to plausibly allege that he suffers from either a disability or a serious medical condition under the meaning of the NMHRA.

mental impairment that substantially limits one or more of a person's major life activities." NMSA 1978, § 28-1-2(O). Major life activities encompass "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." NMSA 1978, § 28-1-2(P).

To satisfy the first element of the prima facia claim for employment discrimination based on a disability under the NMHRA, Plaintiff must first qualify as disabled under the NMHRA. *See White*, 45 F.3d at 360. To do so, Plaintiff must plead sufficient facts in his Amended Complaint to plausibly allege that his disability substantially limits one of his major life activities.[5]

Plaintiff alleges that the nerve damage he suffered as a reaction to the Varicella vaccine constitutes a disability. Doc. 15, at ¶ 64. Plaintiff further alleges that the chance his nerve damage could be exacerbated by the COVID-19 vaccine rises to the level of a disability. However, Plaintiff's Complaint fails to plead any facts or allegations identifying a major life activity that is affected by Plaintiff's serious medical condition or disability. Based on the definition of a "disability" under the NMHRA, Plaintiff's failure to plead facts showing a major life activity affected by his disability is fatal to Plaintiff's discrimination claim. *See Lusk v. Ryder*, 238 F.3d 1237, 1241 (10th Cir. 2001) (granting summary judgment for employer when employee failed to show his "lifting restriction" substantially limited a major life activity).

---

[5] In Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff alleges for the first time that "Mr. Spinelli's mobility, including his ability to perform manual tasks without pain, his ability to sleep and perform other major life activities have been substantially limited as a result of the permanent, irreversible nerve damage he sustained" as a result of his reaction to the Varicella vaccine. Doc. 32 at 6. However, because Plaintiff failed to raise these factual allegations in his Amended Complaint, the Court does not consider these allegations when determining the factual sufficiency of his pleadings. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.") (quotation marks and citation omitted).

Because Plaintiff failed to identify a single major life activity that was substantially limited by Plaintiff's adverse reaction to the Varicella vaccine, Plaintiff's Complaint fails to establish the first element of a prima facie case of employment discrimination based on disability under the NMHRA. Accordingly, Plaintiff's claim for discrimination based on his disability cannot proceed under these allegations and is dismissed without prejudice.

ii. *Discrimination Based on Plaintiff's Serious Medical Condition Under the NMHRA.*

A serious medical condition can serve as the basis for a discrimination claim asserted under the NMHRA. *See* NMSA 1978, § 28–1–7(A). A "serious medical condition" is defined under the New Mexico Administrative Code as "a serious health-related impairment other than a disability, which substantially limits one or more of an individual's major life activities, as 'major life activities' is defined within these rules." NMAC 9.1.1.7(Z). Significantly, the definition of a "serious medical condition" applicable to the NMHRA requires the Plaintiff to demonstrate that his serious medical condition substantially limits at least one of Plaintiff's major life activities.

Plaintiff alleges that the nerve damage he suffered as a reaction to the Varicella vaccine constitutes a serious medical condition. Doc. 15, at ¶ 64. However, as discussed previously, Plaintiff's Complaint fails to identify a major life activity that is limited by Plaintiff's serious medical condition. Without evidence permitting this Court to infer that Plaintiff's serious medical condition limits a major life activity, Plaintiff has not pled enough facts in his Complaint to plausibly allege his serious medical condition falls within the NMHRA's definition.

Therefore, because Plaintiff failed to identify a single major life activity that was substantially limited by Plaintiff's serious medical condition, Plaintiff's Complaint fails to establish the first element of a prima facie case of employment discrimination based on a serious

medical condition under the NMHRA. Accordingly, Plaintiff's claim for discrimination based on his serious medical condition cannot proceed as alleged and is dismissed without prejudice.

     *iii.*    *Retaliation Based on Plaintiff's Serious Medical Condition or Disability Under the NMHRA.*

Plaintiff further alleges in Count I of his Complaint that Defendant retaliated against him based on Plaintiff's serious medical condition or disability.[6] Doc. 15 at ¶ 60.  To plead a prima facie claim of retaliation under the NMHRA, the Plaintiff "must establish 'that (1) he or she engaged in a protected activity, (2) he or she suffered a material adverse action, and (3) there was a causal connection between the protected activity and the adverse action.'" *Muffoletto v. Christus St. Vincent Reg'l Med. Ctr.*, 157 F.Supp.3d 1107, 1117 (D.N.M. 2015) (quoting *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015)). "An employee's request that his employer provide him an accommodation for a disability constitutes a protected activity." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018).

To support Plaintiff's claim, Plaintiff alleges that he was terminated by Defendant for submitting exemption requests from Defendant's vaccine mandate. Doc. 15 at ¶ 110. Although, Plaintiff fails to clearly identify the protected activity Plaintiff engaged in, the Court presumes the Plaintiff's protected activity to be his submission of exemption requests to Defendant's vaccine mandate. Therefore, the Plaintiff has sufficiently pled the first element of a retaliation claim under the NMHRA. *See Lincoln*, 900 F.3d at 1209. Plaintiff also sufficiently pled the second element of suffering an adverse employment action, which was Plaintiff's termination. However, Plaintiff's

---

[6] As discussed previously, Plaintiff did not plead sufficient facts to plausibly allege he suffers from either a serious medical condition or a disability under the meaning of the NMHRA. *See supra* A.1.i.-ii. However, because the framework for a NMHRA retaliation claim does not require this Court to make a preliminary finding of whether the Plaintiff suffers from a serious medical condition or disability, the Court abstains from doing so for the purpose of Plaintiff's NMHRA retaliation claim.

claim fails to demonstrate causation. Plaintiff alleges that being terminated in October of 2021 constitutes sufficient proof of causation, even though Plaintiff submitted his exemption requests two and a half months earlier in July 2021. Under Tenth Circuit precedent, "two months and one week" has been determined to be too extensive of a time period "to establish causation by temporal proximity alone." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004). Plaintiff failed to plead any other facts besides the timing of his termination in support of the causation element.

Further, in a recent case issued by another court in the District of New Mexico, a similar claim by an employee who was terminated for failing to adhere to an employer's mandatory COVID-19 vaccine policy was also found deficient in proving causation. *See Duffee v. T-Mobile USA Inc.*, No. 1:23-cv-00536-MIS-LF, slip op. at *4, 2023 WL 6391376 (D.N.M. 2023). In *Duffee,* the court determined that the plaintiff was not fired because of her disability which prevented her from taking the COVID-19 vaccine, but instead because of her failure to adhere to the mandatory COVID-19 vaccine policy. *Id.*

Therefore, without facts showing causation between Plaintiff's medical exemption requests and his termination two and a half months later, temporal proximity is insufficient on its own to satisfy the third element of a prima facie case of retaliation under the NMHRA. Accordingly, Plaintiff's retaliation claim regarding his disability is dismissed without prejudice.

> **2)** **Plaintiff's Failure to Exhaust his Administrative Remedies Regarding his Discrimination and Retaliation Claim Relating to his Sincerely Held Religious Beliefs.**

In Defendant's motion to dismiss, Defendant argues that this Court lacks subject matter jurisdiction over Plaintiff's discrimination and retaliation claims regarding Plaintiff's sincerely held religious beliefs because he failed to exhaust his administrative remedies prior to bringing his action in this Court. Defendant maintains that a complainant of employment discrimination or retaliation in violation of the NMHRA must strictly adhere to the administrative procedure

contained in the NMHRA prior to filing an action in federal court. Doc. 25-1 at 6-7. Defendant argues, and Plaintiff concedes, that Plaintiff failed to indicate on his charges of discrimination filed with the EEOC and the NMHRB that Plaintiff was claiming discrimination or retaliation on the grounds of religion. *Id.* at 6; Doc. 15 at ¶ 69.[7] Defendant argues that Plaintiff's failure to properly give notice of his religious discrimination and retaliation claims constitutes an absolute bar to Plaintiff's relief under the NMHRA as Plaintiff cannot retroactively alter his charges of discrimination and the time for Plaintiff to file additional charges of discrimination expired on July 28, 2022. Doc. 25-1 at 8.

Plaintiff alleges that his sincerely held religious beliefs prevent him from receiving the COVID-19 vaccine. According to Plaintiff's Complaint, "Plaintiff may not put an experimental drug into his body, particularly one that is developed, tested, and/or produced with technology that and individual deems morally repugnant." Doc. 15 at ¶ 32. While Plaintiff submitted a request to Defendant to be exempt from Defendant's COVID-19 vaccine mandate on the grounds that his sincerely held religious beliefs prevent him from receiving the COVID-19 vaccine, Plaintiff admits he failed to claim discrimination and retaliation on the grounds of Plaintiff's religion on the *charges of discrimination* he filed with the EEOC and the NMHRB. *Id.* at ¶ 32 and 69. Plaintiff notes that he intends to amend his charges of discrimination but fails to cite any avenue for

---

[7] Plaintiff alleges that his sincerely held religious beliefs prevent him from receiving the COVID-19 vaccine. According to Plaintiff's Complaint, "Plaintiff may not put an experimental drug into his body, particularly one that is developed, tested, and/or produced with technology that and individual deems morally repugnant." Doc. 15 at ¶ 32. While Plaintiff submitted a request to Defendant to be exempt from Defendant's COVID-19 vaccine mandate on the grounds that his sincerely held religious beliefs prevent him from receiving the COVID-19 vaccine, Plaintiff admits he failed to claim discrimination and retaliation on the grounds of Plaintiff's religion on the charges of discrimination he filed with the EEOC and the NMHRB. *Id.* at ¶ 32 and 69. Plaintiff notes that he intends to amend his charges of discrimination but fails to cite any avenue for amending his charges after the applicable filing period for his discrimination and retaliation claims expired nine months prior to the filing of his Complaint.

amending his charges after the applicable filing period for his discrimination and retaliation claims expired nine months prior to the filing of his Complaint.

Under Tenth Circuit precedent, "a plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). Further, "the failure to mark a particular box [on the charge of discrimination] creates a presumption that the charging party is not asserting claims represented by that box." *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (citing *Gunnell v. Utah Valley State Coll.* 152 F.3d 1253, 1260 (10th Cir. 1998)). The Tenth Circuit has permitted plaintiffs to rebut this presumption created by failing to check an applicable box on a charge of discrimination so long as "[t]he charge … contain[s] facts concerning the discriminatory and retaliatory actions underlying each claim." *Id.*

Here, Plaintiff failed to indicate religious discrimination on either charge of discrimination that he properly filed with the EEOC and the NMHRB. Doc. 25-2, exs. C; D. The charges of discrimination filed by Plaintiff with the EEOC and NMHRB fail to rebut the presumption created by Plaintiff when he failed to check the box on his charges of discrimination for discrimination and retaliation on account of his religion. The narrative portions of Plaintiff's charges of discrimination do not contain any allegations regarding his religion and fatally do not mention anywhere on the faces of his charges of discrimination that he requested a religious exemption from Defendant's vaccine mandate. Under Tenth Circuit precedent, Plaintiff simply failed to properly exhaust his administrative remedies, as required by law, regarding his religious discrimination and retaliation claims. Because Plaintiff's claim became time-barred to file additional charges with the EEOC and NMHRB on August 3, 2022, and Plaintiff cannot

retroactively amend his charges, Plaintiff's claims for discrimination and retaliation on account of his religion in violation of the NMHRA are dismissed with prejudice.[8]

**B. Defendant's Motion to Dismiss Count II of Plaintiff's Complaint for Breach of Employment Contract is Granted.**

In Defendant's motion to dismiss, Defendant argues that Plaintiff fails to state a claim for breach of an employment contract with Defendant. Doc. 25-1 at 19. Defendant claims that Plaintiff was an at-will employee while employed by Defendant. *Id.* Further, Defendant maintains that its explicit employment policy states that "employment at Coherus is at will" and any changes to an employment contract with Defendant must be made in writing and signed by Defendant's Chief Executive Officer. *Id.* at 21; Ex. A.

Plaintiff claims that he and Defendant were parties to an implied employment contract. Doc. 15 at 83. Plaintiff alleges that his employment with Defendant was not at-will and was instead modified by verbal representations made to Plaintiff by Defendant's agents which led Plaintiff to believe he would only be fired for good cause. Doc. 15 at ¶ 88. Plaintiff further alleges that Defendant breached the modified employment contract when Defendant terminated Plaintiff "absent [non]compliance with [Defendant's] policies, procedures, and rules." *Id.* at ¶ 83.

---

[8] Plaintiff contests the fact that he cannot retroactively amend his charges of discrimination with the EEOC or the NMHRB. However, Plaintiff has consistently been unable to identify a mechanism that would allow amendment of his charges of discrimination, only that he could resubmit his charges of discrimination. *See* Mot. Hr'g Tr., January 8, 2024 at 17:21-25 (this Order cites to the court reporter's unofficial transcript. All page citations are subject to change on the official edited version of the transcript.) However, at the time of Plaintiff's resubmission (June 16, 2023), the 300-day window to file Plaintiff's charges had already expired on August 3, 2022. *See* NMSA 1978, § 28-1-10(A) ("All complaints shall be filed with the division within three hundred days after the alleged act was committed."). Therefore, because it is impossible for Plaintiff's resubmission to counter the expiration of his filing window, Plaintiff's claim is dismissed with prejudice.

Both parties correctly state that the default rule in New Mexico is for all employment contracts to be "terminable at the will of either party unless there is an express contractual provision stating otherwise." *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668, 857 P.2d 776, 779 (1993). Certainly, New Mexico courts have consistently recognized that "an employer can create an implied employment contract based on representations in an employment manual or other practices." *Gonzales v. City of Albuquerque*, 849 F.Supp.2d 1123, 1150 (D.N.M 2011). However, the promises or representations made must be "sufficiently specific" to support a finding of an implied contract. *Hartbarger*, 115 N.M. at 672, 857 P.2d at 783. Further, the reasonableness of an employee's reliance on any expectation created by an employer's representations or conduct is "measured by just how definite, specific, or explicit" the representations or conduct the employee relied on were. *Id.* at 783. "If the alleged employer's promise is not sufficiently explicit, the courts will not find an implied contract." *Gonzales*, 849 F.Supp.2d at 1150; *Gormley v. Coca–Cola Enters.*, 2004–NMCA–021, ¶ 20, 135 N.M. 128, 135, 85 P.3d 252, 259 ("To support the existence of an implied contract, an oral representation must be sufficiently explicit and definite.").

Plaintiff's Complaint provides no specificity regarding what representations Plaintiff alleges Defendant's agents made to him, the identity of those agents, or when the representations were made. Instead, Plaintiff merely states that agents of Defendant made representations that Plaintiff would not be fired unless for good cause. In the absence of any factual support for Plaintiff's allegations, Plaintiff's claim for breach of an implied employment contract cannot proceed.[9] Accordingly, Count II of Plaintiff's claim is dismissed without prejudice.

---

[9] In fact, the parties' briefing seems to only provide support for the Defendant's employment policies which specifically prohibit the type of oral modifications to employment contracts that Plaintiff alleges he had with the Defendant. Defendant's employment policy, which was signed by the Plaintiff, requires any modification to an employment contract to be made by Defendant's CEO in writing. Doc. 25-1 at 21; Doc. 15-2, ex. A. The fact that an employer has policies forbidding the

**C. Defendant's Motion to Dismiss Count III of Plaintiff's Complaint for Breach of the Implied Covenant of Good Faith and Fair Dealing is Granted.**

Count III of Plaintiff's Complaint alleges that Defendant breached the "implied covenant of good faith and fair dealing" when "Defendant wrongfully terminated Plaintiff" absent any misconduct on Plaintiff's behalf. Doc. 15 at ¶¶ 104, 106. Defendant alleges that because there was no modification of Plaintiff's at-will employment status with Defendant, there was no breach of contract by Defendant. Doc. 25-1 at 22. Without a breach of contract claim, Defendant argues, a cause of action for breach of the implied covenant of good faith and fair dealing cannot survive. *Id.*

In reply to Defendant's argument, Plaintiff does not dispute that his claim for breach of the implied covenant of good faith and fair dealing relies on an accompanying sufficient allegation of breach of contract. Doc. 32 at 20.  Instead, Plaintiff merely asserts that his breach of contract claim was pled in his Complaint with sufficient plausibility. *Id.*

New Mexico courts "do not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment relationship" absent a finding of an implied contract term that modifies an employee's at-will status. *Melnick v. State Farm Mut. Auto. Ins. Co.*, 1988-NMSC-012, ¶ 13, 106 N.M. 726, 730. Because Plaintiff failed to adequately state a claim for breach of an implied employment contract, at this time, Plaintiff's claim for breach of the implied

---

modification of an employment contract on its own is not fatal to Plaintiff's claim but indicates that Plaintiff's belief or reliance on the implied contract term is likely unreasonable. *See Chavez-Acosta v. Sw. Cheese Co., LLC*, 610 F. App'x 722, 733 (10th Cir. 2015) ("Given the repeated written acknowledgments of [the employee's] at-will status and the company policy prohibiting oral modification of that status, we find unreasonable any belief [the employee] may have harbored that her status as an at-will employee had morphed into something different.").

covenant of good faith and fair cannot proceed. Accordingly, Count III of Plaintiff's Complaint is also dismissed without prejudice.

**D. Defendant's Motion to Dismiss Count IV of Plaintiff's Complaint for Common Law Retaliation is Granted.**

Count IV of Plaintiff's Complaint alleges a cause of action for common law retaliation under New Mexico state law against Defendant. Defendant argues in its motion to dismiss that Plaintiff failed to identify a clearly articulated public policy which Plaintiff's actions advanced and fails to demonstrate causation between any of Plaintiff's actions and his eventual termination by Defendant. Doc. 25-1 at 17. Defendant proposes that Plaintiff's decision to request an exemption from Defendant's vaccine mandate reflects a personal, private choice which does not constitute an action in furtherance of public policy. *Id.* Defendant maintains that Plaintiff's failure to adequately plead a public policy advanced by his conduct and a causal connection between his conduct and his termination is fatal to Plaintiff's claim for common law retaliation.

Plaintiff alleges Defendant's vaccine mandate required Plaintiff to "disclose sincerely held religious beliefs … and Plaintiff's serious medical condition." Doc. 15 at ¶ 109. As a result of Plaintiff's disclosures, Plaintiff alleges Defendant retaliated against him by terminating him. *See id.* at 112-14. Plaintiff argues that Plaintiff's exemption request submitted to Defendant constituted an action in furtherance of the public policy rationales of promoting "a workplace free from religious [and] medical discrimination" and "maintaining bodily integrity and medical choice." Doc. 32 at 13-14. Plaintiff argues that causation is demonstrated because Plaintiff's disclosure of his serious medical condition and sincerely held religious beliefs "were contributing and motivating factors behind Defendant's decisions to take wrongful employment actions against Plaintiff." *Id.* at 14.

To state a prima facie claim for common law retaliation under New Mexico law in the context of retaliatory discharge, an "employee must (1) identify a specific expression of public policy which the discharge violated; (2) demonstrate that he or she acted in furtherance of the clearly mandated public policy; and (3) show that he or she was terminated as a result of those acts." *Lihosit v. I&W, Inc.*, 1996–NMCA–033, ¶ 7, 121 N.M. 455, 257. The New Mexico Supreme Court categorized the permissible types of clear public policies which satisfy the first prong of the retaliatory discharge framework in *Sherrill v. Farmers Insurance Exchange*. 2016-NMCA-056, ¶ 15, 374 P.3d 723, 728. A plaintiff may identify a statute that

> (1) provide[s] both that an employer may not terminate employees on particular grounds and a remedy in the event of such termination, (2) prohibit[s] an employer from firing an employee on specified grounds without providing a specific remedy for an employee who has been so terminated, or (3) define[s] a public policy that governs the employee's conduct, but does not provide the employee with either a right not to be terminated in violation of that policy, or a remedy for such termination in which case the employee must seek judicial recognition of both the right and the remedy.

*Id.* In the absence of a statute, a court "may determine that, based on other relevant statutes or an implicit public policy, both a right and a remedy should be recognized." *Id.*

Plaintiff alleges the public policy implemented by his actions are "a workplace free from religious discrimination, medical discrimination, and discrimination based upon other protected class distinctions … maintaining personal bodily integrity and medical choice." Doc. 15 at ¶ 111-14. The action Plaintiff took in furtherance of the previously stated public policies was presumably refusing the COVID-19 vaccine.

Plaintiff's argument that his choice to refuse the COVID-19 vaccine furthers a clearly articulated public policy fails. First, Plaintiff does not successfully identify a clearly articulated public policy. Plaintiff does not cite a statute or legislative enactment which clearly states his public

policy rationales. Nor does Plaintiff state any relevant decisions from New Mexico state courts or the Tenth Circuit articulating Plaintiff's public policy rationales.

Second, the New Mexico Supreme Court has previously refused to find an employee's failure to adhere to its employer's policies to be conduct in furtherance of public policy. *Paca v. K-Mart Corp.*, 1989-NMSC-034, ¶ 10, 108 N.M. 479, 481. Additionally, the Tenth Circuit has affirmed district courts' holdings that a protected action that does not serve to benefit the public at large is not an action in furtherance of public policy. *Jeffers v. Butler*, 1991 WL 59365 at *1 (10th Cir. 1991).

Given the precedent of the New Mexico state courts and the Tenth Circuit, Plaintiff's refusal to take the COVID-19 vaccine is not an action in furtherance of public policy. First, Plaintiff's refusal to take the COVID-19 vaccine constitutes a violation of Defendant's policy, (Defendant's vaccine mandate), which applied to all its employees, and as discussed previously, a violation of an employer's policy is not an action in furtherance of public policy. Second, Plaintiff's refusal to take the COVID-19 vaccine was not an action that would benefit the public at large. Instead, refusing to take the COVID-19 vaccine was a private decision that would only serve to benefit the Plaintiff. Given the private nature of Plaintiff's action and Plaintiff's failure to identify any statutes or court decisions supporting Plaintiff's stated public policy rationales, Plaintiff's Complaint has not satisfied the first element of the retaliatory discharge framework. Accordingly, Count IV of Plaintiff's Complaint is dismissed without prejudice.

**E.   Defendant's Motion to Dismiss Count V of Plaintiff's Complaint for Intentional Infliction of Emotional Distress is Granted.**

Count V of Plaintiff's Complaint alleges that Defendant's discriminatory and retaliatory conduct towards Plaintiff based on Plaintiff's serious medical condition and sincerely held religious beliefs constitutes intentional infliction of emotional distress ("IIED"). In Defendant's

motion to dismiss, Defendant argues that Plaintiff's IIED claim fails because Plaintiff failed to identify extreme or outrageous conduct by Defendant or its agents and failed to sufficiently plead Plaintiff's severe emotional distress that resulted from Defendant's actions. Doc. 25-1 at 24.

Plaintiff alleges that Defendant used "its power to coerce Plaintiff" into taking the COVID-19 vaccine, which could have exacerbated Plaintiff's serious medical condition or disability and violate Plaintiff's sincerely held religious beliefs. Doc. 15 at ¶ 21-22. As a result of Defendant's conduct, Plaintiff allegedly "suffered severe emotional distress, including but not limited to severe Post-Traumatic Stress Disorder." *Id.* at ¶¶ 54, 121.

To allege a prima facie claim for IIED under New Mexico law, a plaintiff must establish "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Hakkila v. Hakkila*, 112 N.M. 172, 182, 812 P.2d 1320, 1330 (N.M. Ct. App. 1991). Both parties accurately state that New Mexico courts have found termination of an employee to "support a claim of intentional infliction of emotional distress" but "only in extreme circumstances." *Stock v. Grantham*, 1998-NMCA-081, ¶ 31, 125 N.M. 564, 574. Specifically, the termination must be "conducted in a manner that is 'utterly intolerable in a civilized society.'" *Id.* ¶ 35 (citing *Stieber v. J. Pub. Co.*, 120 N.M. 270, 274, 901 P.2d 201, 205 (N.M. Ct. App. 1995)).

Plaintiff's Complaint fails to allege the Defendant engaged in such severe and intolerable conduct required to plead a cause of action for IIED. As the New Mexico Court of Appeals has stated, "being fired is a common occurrence that rarely rises to the level of being 'beyond all possible bounds of decency' and 'utterly intolerable in a civilized community.'" *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, F, 617, 41 P.3d 333, 338 (2001). Plaintiff failed to allege any facts that

indicate his termination was accompanied by outrageous or severe conduct. Plaintiff was terminated via an email and was offered a severance package by Defendant. Based on Plaintiff's recitation of the facts of his termination, there was no outrageous or severely harmful conduct that could have plausibly been the cause of Plaintiff's severe emotional distress, besides simply being terminated. Without facts alleging the Defendant engaged in outrageous or severe conduct in its treatment of Plaintiff, the Plaintiff has not sufficiently pled an IIED claim. Accordingly, Count V of Plaintiff's Complaint is dismissed.

## IV.
## CONCLUSION

For the reasons stated above, Plaintiff's claim for discrimination and retaliation in violation of the NMHRA on the basis of Plaintiff's sincerely held religious beliefs is dismissed with prejudice. The Court further grants Defendant's motion to dismiss Plaintiff's remaining claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because Plaintiff has failed to plausibly plead the prima facie causes of action for any of Plaintiff's claims.

**IT IS THEREFORE ORDERED** that Defendant Coherus BioSciences, Inc.'s Motion to Dismiss under Rule 12(b)(1) and 12(b)(6) (**Doc. 25**) is **GRANTED**.

**IT IS SO ORDERED.**

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE

21